a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LEONIDAS D LOWRY #400723,<br>Plaintiff | CIVIL DOCKET NO. 1:13-CV-02220<br>SEC P |
| VERSUS | JUDGE DRELL |
| N BURL CAIN,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 filed by pro se Petitioner Leonidas D. Lowry ("Lowry"). Lowry is an inmate at the Raymond Laborde Correctional Center in Cottonport, Louisiana. He challenges a conviction and sentence imposed in the Seventh Judicial District Court, Concordia Parish.

Because Lowry does not meet his burden under § 2254, the Petition should be DENIED and DISMISSED WITH PREJUDICE.

I. Background

Lowry was convicted of attempted simple burglary in Docket No. 10-357. He was sentenced to six years of imprisonment. *State v. Lowry*, 2011-314, p. 2 (La.App. 3 Cir. 11/2/11).

Lowry was also convicted of simple burglary in Docket No. 10-1452. He was then charged as a multiple offender, premised on three prior convictions of simple burglary and a conviction of possession of cocaine. *See State v. Lowry*, 2011-361, p.

1

3 (La.App. 3 Cir. 11/2/11); 75 So.3d 980, 982.  Lowry was sentenced to 65 years of imprisonment, and the six-year prison term from Docket 10-357 was vacated.  ECF No. 53-2 at 129.

Lowry filed a motion to reconsider his 65-year sentence as excessive, which was denied.[1]  ECF No. 53-3 at 132-33.

Lowry appealed both convictions, which were consolidated for briefing purposes.  ECF No. 53-4 at 19.  Lowry's counsel asserted claims of ineffective assistance of counsel and insufficient evidence.[2]  *Id.* at 233.  Lowry also filed a pro se brief claiming that the trial court failed to apprise him of his right to remain silent at the multiple offender hearing; the state failed to establish that he was represented by counsel or properly advised of his rights pursuant to *Boykin v. Alabama*, 395 U.S. 238 (1969) in his prior convictions; and he received ineffective assistance of counsel at the multiple offender hearing.  *Lowry*, 75 So.3d at 982.

The appellate court determined that Lowry's claims of ineffective assistance of counsel should be raised on post-conviction review.  *Id.* at 1013.  The appellate court concluded that the trial court's failure to advise Lowry of his right to remain silent was harmless error because Lowry did not testify.  Lowry had waived the opportunity to address the court by not speaking up prior to the pronouncement of his 65-year sentence.  *Id.* at 983.  The court also determined that Lowry was represented by

---

[1] At the time of sentencing, Lowry was 32 years old.  Therefore, he asserts that his 65-year sentence is equivalent to a life sentence.

[2] The issue of insufficient evidence was not briefed, so the claim was deemed abandoned and not considered by the appellate court.  *Lowry*, 75 So.3d at 1013.

2

counsel when he pleaded guilty to simple burglary in 2003, possession of cocaine in 2004, and two counts of simple burglary in 1998. *Id.* The court found that Lowry had been advised of his *Boykin* rights at every prior guilty plea. *Id.* The convictions and 65-year sentence were affirmed. *Id.*

Lowry sought further review of the multiple offender conviction and sentence. The Louisiana Supreme Court issued a one word denial of Lowry's writ application. *State v. Lowry*, 85 So.3d 694, 2011-2663 (La. 2012).

Lowry filed an application for post-conviction relief in the trial court and a § 2254 Petition and Motion to Stay in this Court. Because Lowry's Petition contained unexhausted claims, the Court granted the Motion to Stay pending the resolution of the post-conviction application. ECF No. 18.

The trial court conducted a hearing on Lowry's post-conviction application, at which he and his trial attorney, Katherine Guste, testified. ECF No. 53-14 at 146-201. The application was denied. *Id,* at 230.

The appellate court denied writs finding that Lowry had not carried his burden under Louisiana Code of Criminal Procedure article 930.2. ECF No. 53-11 at 274. The Louisiana Supreme Court also denied writs.[3]

---

[3] Justice Crichton wrote:

> I would grant and docket this matter to determine whether, after review of the post-conviction record evidence, the defendant's trial counsel rendered ineffective assistance of counsel at sentencing. Where the defendant faces a 65-year sentence as a habitual offender of non-violent crimes, I believe further study is warranted as to whether the defendant's trial counsel failed "to conduct a reasonable investigation into factors which may warrant a downward departure from the mandatory minimum" and to present that information to the district court. *State v. Harris*, 2018-1012, p. 9 (La. 7/9/20),

Lowry maintains that his conviction and sentence are unconstitutional. He claims that: (1) he was denied effective assistance of counsel at all stages of the proceeding; (2) there was insufficient evidence to convict him; (3) his Fifth and Fourteenth Amendment rights were violated when he was not apprised of his right to remain silent at his multiple offender hearing; and (4) the trial court failed to determine whether he was properly advised of his rights with respect to prior convictions. ECF No. 4.

## II. Law and Analysis

### A. Standard of Review

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply de novo review of factual findings or to substitute its own opinions for the determinations made by the

---

340 So. 3d 845, 858. If defendant is able to prove he was provided ineffective assistance of counsel at sentencing that resulted in an excessive sentence, the consequences of denying post-conviction relief would leave defendant "with no real remedy for the denial of the Sixth Amendment right to effective representation during sentencing, a critical stage of the proceedings." *Harris*, 2018-1012 (La. 7/9/20), 340 So. 3d 845, 863 (Crichton, J., concurring). When a defendant is denied his or her right to effective representation during sentencing, it is my view that we must adhere to the basic constitutional protections of post-conviction relief to proscribe an excessive sentencing that follows. Accordingly, I would vote to grant defendant's application for review and docket this matter such that the Court may review the constitutional challenges presented with the benefit of the record and further briefing.

*State v. Lowry*, 2022-00941 (La. 11/1/22, 1–2); 349 So.3d 13-14. Justice Griffin agreed with Justice Crichton.

trial judge. *See Davis v. Ayala*, 576 U.S. 257, 276 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)).

Under § 2254 and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in state court unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Martin v. Cain*, 246 F.3d 471, 475-76 (5th Cir. 2001), *cert. den.*, 534 U.S. 885 (2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. *See Martin*, 246 F.3d at 476; *see also Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007), *cert. den.*, 555 U.S. 827 (2008).

A federal habeas court should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application

5

was also unreasonable. *See Martin*, 246 F.3d at 476. An unreasonable application is different from an incorrect one. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). When a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable. *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Fry v. Pliler*, 551 U.S. 112, 119 (2007)).

Before seeking federal habeas corpus relief, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); 28 U.S.C. § 2254(b)(1). To provide the State with this necessary "opportunity," the prisoner must "fairly present" his claim to the appropriate state court—including the highest court—in a manner that alerts that court to the federal nature of the claim. *Baldwin*, 541 U.S. at 29-32 (rejecting the argument that a petitioner "fairly presents" a federal claim, despite failing to give any indication in his appellate brief of the federal nature of the claim through reference to any federal source of law, when the state appellate court could have discerned the federal nature of the claim through review of the lower state court opinion); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (claim for federal relief must include reference to a specific constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief).

6

Additionally, the claim must be presented to the state court in accordance with state procedures. When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted." To overcome procedural default, the prisoner must demonstrate "cause" to excuse the procedural defect and "actual prejudice" if the federal court were to decline to hear his claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### A. Lowry fails to establish insufficient evidence.

Lowry alleges that he was denied a fair trial because there was insufficient evidence to convict him. ECF No. 41 at 6. Lowry listed this claim in his direct appeal, but he failed to brief the issue. ECF No. 53-3 at 236; 53-4 at 1-3. Therefore, the appellate court determined that Lowry abandoned the claim. *Lowry*, 75 So.3d at 1013 (citing Uniform Rules–Courts of Appeal, Rule 2–12.4).

A federal habeas court "will not review a claim rejected by a state court if the decision of the state court rests on a state ground that is independent of the federal question and adequate to support the judgment," including procedural barriers. *Walker v. Martin*, 562 U.S. 307, 315 (2011) (internal quotation marks omitted). "[A] basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default that is based upon an adequate and independent state ground." *Buntion v. Lumpkin*, 982 F.3d 945, 951 (5th Cir. 2020) (quoting *Smith v. Johnson*, 2167 F.3d 521, 523 (5th Cir. 2000)); *see also Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) ("A federal habeas court 'does not have

license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'").

The Louisiana Third Circuit Court of Appeal specifically invoked Rule 2–12.4, which establishes briefing requirements that parties must meet to preserve claims for review. Federal courts have consistently held that Rule 2-12.4 is an adequate and independent procedural bar. *See, e.g., Williams v. Vannoy*, No. 15-2235, 2017 WL 2303511, at *11 (E.D. La. 2017) (collecting cases). Additionally, because the issue was not briefed, the State did not get a full and fair opportunity to address this claim. *See Baldwin*, 541 U.S. at 29-32; *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971). Therefore, the claim is not exhausted.

Federal habeas review is now barred unless "the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004). Lowry has established neither.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005), *cert. denied*, 546 U.S. 831 (2005). It is the "responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. at 2. Additionally, the Court's review is limited to the

evidence presented at trial. *See Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) *cert. denied*, 559 U.S. 995 (2010).

The federal court must look to the substantive elements of the offense when applying the *Jackson* standard. *See Norris v. Dretke*, 826 F.3d 821, 833 (5th Cir. 2016), *cert. denied*, 137 S.Ct. 1203 (2017). For purposes of Lowry's attempted simple burglary conviction, the state had to prove that Lowry entered a structure without authorization, with the intent to commit a felony or theft. *See* La. R.S. 14:62.

Officer Robert Douglas testified that the Vidalia Police Department employs him to patrol the city at night in a marked police car to check that all business and school doors and windows are locked and that nothing is "out of the ordinary." ECF No. 53-5 at 122. In the early morning hours of February 13, 2010, Officer Douglas was checking the Sandbar restaurant, when he saw a vehicle in the parking lot. *Id.* at 125. He noticed that a fence was missing boards that had been in place earlier in the evening. *Id.* at 126. He also noticed that a lock was missing from a storage building. *Id.* at 128. Officer Douglas called for backup. *Id.* at 130.

While another responding officer was climbing a fence to investigate, Officer Douglas saw Lowry "bust out" from the storage building. *Id.* at 132. The officers gave numerous verbal commands to stop. *Id.* at 134. Lowry ignored the commands and ran into a neighboring area. *Id.* When officers entered the storage building, they discovered two boxes of frozen meat on the floor.

Officer Miranda Clifton testified that, while another officer was climbing the fence to investigate, she saw the door of the storage building open revealing a white

male with a dark gray jacket and "hoodie" standing inside the storage unit with a white box in his hands. ECF No. 53-5 at 154. She gave a command for the person to stop, but he dropped the box and ran. *Id.* Officer Clifton also identified Lowry as the individual she saw in the storage shed that night. *Id.*

Officer Heath Edwards testified that he responded to the scene in the early hours of February 13, 2010. He saw an individual jump a fence and run, with Officer Heath Butler in pursuit. *Id.* at 205. He proceeded to the location where Officer Butler chased the suspect and arrested him. *Id.* Officer Edwards also identified Lowry as the suspect he saw that night. *Id.*

Officer Butler testified that he responded to Officer Douglas's call. He saw the vehicle in the parking lot of the Sandbar and noticed that a lock on a storage building appeared to have been tampered with. *Id.* at 217. While climbing through the fence, he saw a white male run from the storage room. *Id.* at 221. Officer Butler testified that he and Officer Clifton gave verbal commands to stop, which were ignored. *Id.*

Officer Butler continued to search for the suspect. He eventually ran down an alley where Officer Clifton spotted the suspect. *Id.* at 226. Officer Butler saw the suspect "dart" out from the back of the alley. *Id.* at 227. After additional commands to stop were ignored, Officer Butler deployed his taser. *Id.* at 228. The taser struck the suspect's backpack. *Id.* The suspect continued to run, but eventually complied with the officer's commands. *Id.* at 231. Officer Butler arrested the suspect, who he identified in court as Lowry. ECF No. 53-5 at 241.

The owner of the Sandbar, Mr. Ricky Rowlin, testified that Lowry previously worked as a cook at the restaurant. *Id.* at 108-09. He testified that Lowry knew how to gain entry to the freezers, and Lowry did not have his permission to be at the Sandbar that morning. *Id.*

Based on the testimony viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of attempted simple burglary beyond a reasonable doubt. Therefore, Lowry cannot demonstrate that a failure to address the claim would result in a fundamental miscarriage of justice.

### B. Lowry's Fifth and Fourteenth Amendment rights were not violated at his multiple offender hearing.

Lowry alleges that his constitutional rights were violated when the trial court failed to apprise him of his right to remain silent at the multiple offender hearing. ECF No. 4-1 at 18. However, Lowry's adjudication as a fourth felony offender was based on his previous guilty pleas and not on any admissions made during the habitual offender hearing. In fact, Lowry remained silent during the proceeding. Since Lowry did not confess and was found to be a habitual offender based on the state's testimony and evidence, his claim is without merit. *See Triplett v. Cain*, 04-CV-1434, 2011 WL 3678173, at *10 (E.D. La. 2011); *Smith v. Cain*, 06-CV-3847, 2008 WL 2651462, at *7 (E.D. La. 2008).

### C. The state met its burden at the multiple offender hearing.

Lowry alleges that the state failed to establish that he was represented by counsel or properly advised of his rights with respect to his prior convictions. Lowry does not contend that his guilty pleas on the predicate convictions were not knowing

11

and voluntary. Rather, he asserts thfat the state did not meet its burden of proving that he made a knowing and voluntary waiver of rights in the predicate offenses as required by *Boykin*.

A habeas petition is an improper vehicle for lodging constitutional attacks on prior convictions used for sentencing enhancements. *See Daniels v. United States*, 532 U.S. 374 (2001). Regardless, prior convictions used for a sentencing enhancement enjoy a "presumption of regularity" and compliance with *Boykin*. *Parke v. Raley*, 506 U.S. 20, 30 (1992). The defendant bears the burden of proving noncompliance. Therefore, it is constitutional for the state court, at least initially, to presume the validity of prior convictions used for sentence enhancement. *Id.*; *United States v. Barlow*, 17 F.3d 85, 89 (5th Cir. 1994) (holding that the defendant bears the burden of proving the invalidity of a prior conviction that is allegedly defective under *Boykin*), *cert. denied*, 513 U.S. 850 (1994); *Weeks v. Cain*, 13-CV-451, 2014 WL 4976317, at *16 (M.D. La. 2014).

At Lowry's multiple offender hearing, the state introduced: (1) a fingerprint card, a *Boykin* form, and minutes from Jefferson Parish Docket No. 03-5676, where Lowry pleaded guilty to simple burglary; (2) a fingerprint card, *Boykin* form, and minutes from Jefferson Parish Docket No. 04-0273, where Lowry pleaded guilty to possession of cocaine and to a triple bill admitting two prior felonies; and (3) a fingerprint card, *Boykin* form, and minutes from Jefferson Parish Docket No. 97-1691, where Lowry pleaded guilty to simple burglary. ECF No. 53-10 at 132.

Furthermore, retired Officer Wesley Bruce testified as a certified latent fingerprint examiner. *Id.* at 139. Bruce recorded Lowry's fingerprints, which he identified in court. *Id.* at 141. The prints were admitted into evidence. *Id.* at 143. Bruce testified that the prints he recorded from Lowry matched those on the other fingerprint cards. *Id.* Bruce detailed how he used 12 points of identification in analyzing the prints. *Id.* at 141-44.

Lowry does not meet his burden of showing that the prior convictions, which are entitled to a presumption of regularity, were unlawful. Nor does he show that the trial court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### D. Lowry cannot establish ineffective assistance of counsel.

The state courts found that Lowry could not meet the standard of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This Court does not decide whether the state court's *Strickland* determination was incorrect, but whether it was unreasonable, which presents a substantially higher threshold for a petitioner to meet. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

To satisfy the first prong of *Strickland*, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). The petitioner bears the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for

counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (quoting *Strickland*, 466 U.S. at 688-89). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See Wiggins*, 539 U.S. at 523; *Bell*, 535 U.S. at 698; *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a petitioner must establish a reasonable probability that, but for the objectively unreasonable misconduct of counsel, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694. And the "likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

### 1. Lowry does not establish ineffective assistance during or prior to trial.

Lowry asserts that his attorneys, Madeline Gibbs and Katherine Guste, rendered ineffective assistance during and prior to trial.[4] He alleges that Gibbs and Guste "failed to take action" when Lowry "indicated that he felt pressured by the

---

[4] Lowry was initially represented by Ms. Gibbs, a public defender. After the jury was empaneled and the state's first witness began to testify, Lowry hired a new attorney, Ms. Guste. ECF No. 53-1 at 242; 53-2 at 52-59. The trial was resumed one month later. *Id.* at 64. Ms. Guste withdrew prior to the multiple offender proceeding, and Ms. Gibbs resumed representation.

14

District Attorney to accept a plea deal." ECF No. 4-1- at 14. He also asserts that Guste: (1) pressured him to take a plea[5]; (2) did not properly investigate his case or examine the state's evidence; and (3) did not "effectively communicate" with him or his family to make strategic decisions. *Id.*

To establish ineffective assistance, Lowry must demonstrate that Gibbs's or Guste's performance was both deficient and prejudicial. *See Strickland*, 466 U.S. at 668. Lowry shows no deficiency or prejudice with respect to his claims that he was pressured to plead guilty. Lowry does not identify what "action" he believes his attorneys should have taken in response to pressure from the district attorney. Lowry did not succumb to the perceived pressure from the state or counsel. ECF No. 41-4 at 14.

Prior to trial, the district attorney offered Lowry a 17-year term of imprisonment. ECF No. 53-3 at 156. Lowry states that he turned down the offer on advice of counsel. After trial, the district attorney offered 20 years if Lowry stipulated to being a multiple offender and offered some amount of restitution to victims. *Id.* Lowry "balked on that," and "didn't want it." *Id.* at 156-57. The state withdrew the offer after preparing for a multiple offender trial. *Id.* Lowry does not claim that he would have accepted the offer but for any pressure he felt from the state or Ms. Guste.

---

[5] Contrary to his argument here, Lowry argued in his post-conviction writ application that Guste advised him not to accept the plea offer. ECF No. 53-11 at 260.

Nor does he establish that the state courts' rulings on the issue were contrary to or an unreasonable application of *Strickland*.

Next, Lowry alleges that Guste did not properly investigate his case or examine the state's evidence. He also asserts that she did not move to suppress a screwdriver that was reportedly found in his pocket.

An allegation of a failure to investigate must be supported—with specificity—by what the investigation would have revealed and how it would have altered the outcome. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000). Lowry does not identify what he believes further investigation would have revealed or how the outcome would have been different. There was sufficient evidence to convict him of attempted simple burglary without consideration of the screwdriver, as discussed above. Thus, even assuming Guste's actions before or during trial fell below an objective standard of reasonableness, Lowry cannot establish prejudice.

Finally, Lowry alleges that Guste did not effectively communicate with him or his family to make strategic decisions. Lowry chose to hire Guste after the jury was empaneled and trial had begun. He does not identify or explain how additional communication would have affected the outcome of the trial. Nor does Lowry establish that the trial court's denial of his claim was contrary to or an unreasonable application of *Strickland*.

16

### 2. Lowry does not establish ineffective assistance at sentencing.

Lowry alleges that Gibbs provided ineffective assistance during the habitual offender proceedings when she failed to object to the lack of a *Boykin* admonition. In *Boykin*, the Supreme Court held that a trial court should not accept a guilty plea without first ensuring that the defendant knowingly and voluntarily waives his right against self-incrimination, his right to trial by jury, and his right to confront witnesses against him. *Boykin*, 395 U.S. at 243. But *Boykin* has limited application in a multiple offender proceeding. *See United States v. Davis*, 54 F. App'x 793 (5th Cir. 2002); *Joseph v. Butler*, 838 F.2d 786, 789-92 (5th Cir. 1988); *Buckley v. Butler*, 825 F.2d 895 (5th Cir. 1987). And *Boykin* is wholly inapplicable here because Lowry did not plead guilty.

Lowry also alleges ineffective assistance because Gibbs failed to inform the court of his desire to testify at the multiple offender hearing. ECF No. 4-1 at 19. The right to allocution is not a right granted or protected by the federal constitution. Its denial presents no cognizable federal habeas issue. *See United States v. Reyna*, 358 F.3d 344, 349 (5th Cir. 2004) ("[T]he right of allocution is deeply rooted in our legal tradition and an important, highly respected right; nonetheless it is neither constitutional nor jurisdictional."); *Kelly v. Thaler*, 10-CV-2385, 2010 WL 4736619, at *2 (S.D. Tex. 2010).

Gibbs argued to the sentencing judge that none of Lowry's prior crimes were crimes of violence. ECF No. 53-3 at 157. She also cross-examined Bruce on his qualification as a latent fingerprint expert and as to his findings. *Id.* at 163-81. Gibbs

17

filed a motion to reconsider the sentence, which was denied after hearing.  ECF No. 53-3 at 231.

Even assuming Ms. Gibbs's performance at sentencing was deficient, Lowry cannot demonstrate, to a reasonable probability, that the result of the proceedings would have been different but for the alleged ineffective assistance.  The sentencing judge was aware of Lowry's allegedly mitigating circumstances of drug use and non-violent history.  A drug screen the day of the offense shows that Lowry tested positive for marijuana and cocaine.  ECF No. 53-1 at 41.  The trial court also ordered that Lowry be evaluated by Jonesville Addictive Disorders Clinic.  ECF No. 53-1 at 19.  Lowry's criminal history was part of the record and discussed at sentencing.  ECF No. 53-4 at 75-78.

Lowry does not establish that the state courts' adjudication "resulted in a decision that was contrary to or involved an unreasonable application" of *Strickland*.  *See* 28 U.S.C. §2254(d)(1); *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009).

### 3.  Ineffective assistance on appeal.

Finally, Lowry argues that he received ineffective assistance of counsel on appeal because his attorney failed to brief the issue of insufficient evidence, causing the appellate court to determine that Lowry had abandoned the claim.  *Lowry*, 75 So.3d at 1013 (citing Uniform Rules–Courts of Appeal, Rule 2–12.4); ECF No. 53-3 at 236; 53-4 at 1-3.  As discussed above, there was sufficient evidence to convict Lowry.  Appellate counsel's failure to pursue relief on a ground that would not have prevailed on appeal does not constitute ineffective assistance.  *See Styron v. Johnson*, 262 F.3d

438, 450 (5th Cir. 2001); *see also, Penson v. Ohio*, 488 U.S. 75, 83-84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (appointed appellate counsel need not make frivolous arguments).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted); *Isbel v. Davis*, 16-CV-2836, 2018 WL 8951192, at *6 (S.D. Tex. 2018). Lowry does not meet the doubly deferential standard to establish ineffective assistance of counsel.

## III. Conclusion

Because Lowry cannot meet his burden under § 2254, IT IS RECOMMENDED that the Petition be DENIED and DISMISSED, WITH PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and

Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

SIGNED on Monday, March 31, 2025.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE